# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| CHARLES EDWARD BOYD | CIVIL ACTION NO. 03-1249-P |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| RICHARD STALDER, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before the Court is a Motion for Summary Judgment (Record Document 133) filed by Defendant Venetia Michael ("Warden Michael"). Warden Michael moves for summary judgment, arguing that she is entitled to qualified immunity. See Record Document 133-6 at 4. Plaintiff Charles Edward Boyd ("Boyd") opposed the motion. See Record Document 136. For the reasons which follow, the Motion for Summary Judgment is **DENIED**.

**I.   BACKGROUND.**

Boyd is an inmate in the custody of the Louisiana Department of Public Safety and Corrections and is confined at the David Wade Correctional Center in Homer, Louisiana. He filed the instant action against Warden Michael pursuant to Title 42, United States Code, Section 1983. He specifically challenges Warden Michael's prior application of Louisiana Department of Public Safety and Corrections Regulation No. C-02-009, a regulation enacted by the Louisiana Department of Public Safety and Corrections and found to be constitutional by this Court.

The Louisiana Department of Public Safety and Corrections enacted Department Regulation No. C-02-009 ("the Regulation") in June 2002. The regulation sets forth rules and procedures regarding correspondence and packages received or sent by inmates. Paragraph 10(b) of the Regulation addresses the refusal of publications. It states that such

an item:

> shall only be refused if it interferes with legitimate penological objectives (including but not limited to deterrence of crime, rehabilitation of inmates, maintenance of internal/external security of an institution or maintenance of an environment free of sexual harassment) . . . .

The provision then sets forth categories of items that would be included within the prohibition. Sub-paragraph (6) describes one category as follows:

> The material features depictions of nudity on a routine or regular basis or promotes itself based upon such depictions or which is sexually explicit and which may thereby contribute to a sexually offensive environment and the sexual harassment of staff or inmates.

An amendment to the Regulation was enacted in November 2003 to add a sentence to subparagraph (6) as follows: "This includes material presented in a manner to provoke or arouse lust, passion or perversion or exploits sex."

The relevant time period for this case is October 2003 to September 2005. Boyd claims that during this time period, Warden Michael applied Department Regulation No. C-02-009 in an overly broad manner, such that all publications featuring women in sexy poses, whether nude or not, were banned. He also claims that Warden Michael's broad ban extended to all African- American magazines. Boyd challenges Warden Michael's application of Department Regulation C-02-009 on First Amendment grounds.

Warden Michael denies violating the constitutional rights of inmate Boyd. She asserts that at no time did she apply the provisions of Department Regulation No. C-02-009 in a broad or discriminatory manner. She further contends that at no time did she apply the provisions of Department Regulation No. C-02-009 in a manner to violate the constitutional rights of Boyd.

On April 7, 2008, Boyd's claim for nominal and punitive damages came on for jury

trial. The Court declared a mistrial on April 9, 2008 when the jury informed the Court that it could not reach a unanimous decision. The jury trial in this matter has been reset for September 15, 2008. Warden Michael now moves for summary judgment, arguing that she is entitled to qualified immunity.[1]

## II.   LAW AND ANALYSIS.

### A.   Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[1] Warden Michael previously urged qualified immunity as a defense. See Record Document 42. The Court denied summary judgment as to the qualified immunity defense, stating:

> When the facts are taken in the light most favorable to Plaintiff, they demonstrate the violation of a clearly established constitutional right that would be sufficiently clear to a reasonable official. See Hope v. Pelzer, 122 S.Ct 2508 (2002). A ban against all general population inmates receiving African-American oriented magazines or publications with non-obscene matters such as pictures of women in miniskirts, for which Defendants have made no argument of legality under Turner, would be recognized by a reasonable public official as a violation of the First Amendment.
> Plaintiff reports that David Wade was the only Louisiana facility that interpreted the Department Regulation in the broad fashion he claims was employed. The dissents in Mauro and the different approaches taken by circuit courts with respect to the Ensign Amendment show that the constitutionality of a restriction on even nude photographs and sexually explicit materials is not always a given. There is no suggestion in decisions cited by any party that pictures of women in short skirts or bikinis or tight pants may be automatically banned from the entire general population of inmates. Given the retention of First Amendment rights by inmates and the lack of any record evidence that would permit such a restriction to satisfy the Turner test, Defendants have not established that they are entitled to qualified immunity. Plaintiff has not identified a reported decision that has struck down similar bans, but there may never have been such broad bans in a prison. An official can be on notice that her conduct violates established law even in novel factual circumstances that have not been the subject of a reported appellate decision. Hope, 122 S.Ct. at 2516.

Record Documents 45 & 49.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

### B. Qualified Immunity.

The defense of qualified immunity protects government officials performing discretionary functions from personal liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See McClendon v. City of Columbia, 305 F.3d 314, 322 (5th Cir.2002) (en banc). In order to determine whether an official is entitled to qualified immunity, courts must perform a two-step inquiry: (1) whether, considered in the light most favorable to the plaintiff, the plaintiff has alleged facts that, if proven, would establish that the official violated his constitutional rights; and (2) whether the right was clearly established. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001); Stotter v. Univ. of Tex., 508 F.3d 812, 823 (5th Cir.2007). Even when a constitutional right may have been

violated, the official is entitled to qualified immunity unless the court concludes that the official's actions were objectively unreasonable in light of clearly established law at the time of the actions at issue. See McClendon, 305 F.3d at 323. For a right to be "clearly established" for purposes of qualified immunity, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir.2004). The salient question is whether the state of the law at the time of the alleged violation gave officials "fair warning" that their acts were unlawful. Hope v. Pelzer, 536 U.S. 730, 740, 122 S.Ct. 2508, 2516 (2002).

The Fifth Circuit has held that prison officials may, consistent with the First Amendment, limit access to *sexually explicit* material. See Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). Similar litigation has arisen from a federal law known as the Ensign Amendment, which prohibits the use of federal funds to "distribute or make available to a prisoner any commercially published information or material that is *sexual explicit or features nudity*." 28 U.S.C. § 530C(b)(6)(D) (emphasis added). Nudity is defined as a "pictorial depiction where genitalia or female breasts are exposed." Sexually explicit is defined as "a pictorial depiction of actual or simulated sexual acts including sexual intercourse, oral sex, or masturbation." 28 C.F.R. § 540.72.

Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254 (1987), sets forth the general test for determining whether a prison regulation that infringes on constitutional rights may be enforced. One court faced with a challenge to the Ensign Amendment upheld the law based on an application of Turner without requiring an extensive factual record. See Amatel v. Reno, 156 F.3d 192 (D.C. Cir. 1998). Another court has, however, held that the district court's dismissal of the prisoner's claim was premature absent a more extensive

factual record to support the ban's reasonableness. See Ramirez v. Pugh, 379 F.3d 122 (3d Cir. 2004). This split has created uncertainty about the degree of evidentiary support needed to defend the federal law. See Dimitrios Korovilas, Pornless Prisons: An Unreasonable Restriction?, 39 U.C. Davis Law Review 1911 (June 2006).

Again, Boyd claims that from October 2003 to September 2005, Warden Michael applied Department Regulation No. C-02-009 in a manner that violated his First Amendment constitutional rights. He specifically alleges that she applied Section 10(B)(6) in a manner that banned all publications featuring women in sexy poses, whether nude or not. He further claims that the ban extended to all African-American magazines. Warden Michael urged qualified immunity as a defense in an earlier motion for summary judgment and the Court denied the defense. Warden Michael now reurges the defense of qualified immunity based on trial testimony, her affidavit submitted in support of the Motion for Summary Judgment, and a 2007 opinion issued by the Northern District of Georgia.

At trial, the Court denied Warden Michael's Rule 50 motion[2] based on qualified immunity, both at the close of Boyd's case and at the conclusion of all evidence. Warden Michael testified at trial as to her *subjective* good faith, i.e., her meetings with Secretary Stalder regarding the application of Department Regulation No. C-02-009; however, this is not relevant to the qualified immunity analysis, which is entirely *objective*. The trial record simply does not support a Rule 50 or Rule 56 judgment of qualified immunity.

Warden Michael's affidavit submitted in support of her motion outlines that the viewing of *sexually suggestive* materials is a threat to the security of the institution and the

---

[2]"The difference between a motion for directed verdict and that for summary judgment is largely a matter of the stage of the proceedings when the motion is made." Loftis v. Southeastern Drilling, Inc., 43 F.R.D. 32, 34 (E.D. La. 1967).

safety of inmates and staff. She also notes, in her opinion, that the viewing of sexually suggestive materials undermines the rehabilitation of inmates. While there is a valid, rational connection under Turner between these safety and rehabilitation concerns and a policy banning nudity and sexually explicit materials, Warden Michael has failed to reference any penological study, expert opinion, or specific personal experiences that supports a finding for a policy banning all general population inmates receiving African-American oriented magazines or publications with non-obscene matters such as pictures of women in bikinis or miniskirts. Counsel has not sought to qualify Warden Michael as an expert in penology. Her lay opinion, without more, is legally insufficient. She has not come forward with evidence of a valid rational connection and simply has not established the legality of such broad policies under the first Turner factor.[3] Further, the Court questions whether such a broad ban may be an exaggerated response to the prison's concerns, the fourth Turner factor. See Turner, 482 U.S. 78, 107 S.Ct. 2254.

Warden Michael also relies heavily upon Daker v. Ferrero, 506 F.Supp.2d 1295 (N.D. Ga. 2007), arguing that the opinion "clearly means that at present, there exists in the federal system no clearly accepted right that inmates are entitled to receive sexually suggestive materials, even if they would not be considered pornographic." Record Document 133-6 at 6. At the outset, the Court notes that Daker, a 2007 case, was not clearly established law at the time of Warden Michael's actions in 2003-2005. See McClendon, 305 F.3d at 323. Daker is also distinguishable from the instant matter because it involved books that are more sexually graphic than the magazines involved in this case. In Daker, Defendants asserted qualified immunity with respect to a prison policy

---

[3] The first Turner facts is a valid, rational connection between the policy and legitimate penological objectives. See Turner, 482 U.S. 78, 107 S.Ct. 2254.

that banned the following books from general population: Different Loving: The World of Sexual Dominance and Submission; Witchcraft: A Secret History; The Mammoth Book of Love and Sensuality; The Joy of Sex; The Tao of Sexuality; The Kama Sutra; three Fantagraphics books; and Guide to Getting it On. See id. at 1310. Defendants argued that these books, which contain nudity and sexually explicit material, encourage sexually deviant behavior and may lead to violence among inmates and other internal security problems because such materials are traded and exchanged among prisoners. See id. The district court "agree[d] with Defendants that the denial of publications which stimulate sexual desire is reasonably related to maintaining security and good order in a prison institution." Id. at 1311. The court further reasoned:

> Because a prison official could reasonably conclude based on the title of each of the above-referenced books, or a cursory review of their content, that each contains content which may encourage sexually deviant behavior and may lead to violence among inmates and other internal security problems, Plaintiff has failed to allege a constitutional violation with respect to these books. Moreover, Plaintiff has failed to direct the Court to any precedent which clearly establishes the right to access books of a similar title or description. For both reasons, Defendants are entitled to qualified immunity.

Id. The court observed that the book Witchcraft: A Secret History presented a closer question because its title did not conspicuously indicate the presence of sexually provocative content and it appeared to contain only a single image illustrating the exposed breasts of the Greek Goddess Hecate. See id. at 1311, n. 7. Yet, the court concluded that Plaintiff had failed to demonstrate that a denial of this publication was not reasonably related to security and good order due to the considerable deference afforded to prison officials. See id.

    The publications at issue in this case contain at most sexually suggestive material, while the books discussed in Daker contained nudity and sexually explicit material.

Moreover, the argument that a prison official could reasonably conclude based on the title of the publications in this case, or a cursory review of their content, that each contained content which may encourage sexually deviant behavior is simply not plausible, as the titles at issue include Esquire, Vibe, and Jet, not titles such as Different Loving: The World of Sexual Dominance and Submission; The Mammoth Book of Love and Sensuality; The Joy of Sex; The Tao of Sexuality; The Kama Sutra; or Guide to Getting it On.

Warden Michael cites no authority other than Daker that would authorize such a broad or racially discriminatory ban in the general population of a prison. Daker is not controlling precedent and is distinguishable from the instant case. Warden Michael has not directed the Court to any other decision that suggests that pictures of women in short skirts, bikinis, or tight pants may be automatically banned from the entire general population of inmates.[4] Given the retention of First Amendment rights by inmates and the lack of any record evidence that would permit such a restriction to satisfy the Turner test, Warden Michael has not established that she is entitled to qualified immunity. While it is true that Boyd has not identified a reported decision that has struck down similar bans, it may be too soon for the courts to have opined on the constitutionality of such broad bans in a prison. Further, an official can be on notice that her conduct violates established law even in novel factual circumstances that have not been the subject of a reported appellate decision. See Hope, 536 U.S. at 741, 122 S.Ct. at 2516. Accordingly, summary judgment is denied on the issue of qualified immunity.

## III.   CONCLUSION.

Based on the foregoing analysis, the Court finds that the summary judgment record

---

[4]The copy of the magazine ad for "The Better Sex video Series," which is at issue in this case, would qualify as a depiction of a simulated sex act, which can be restricted.

is insufficient to determine whether Warden Michael's application of Department Regulation No. C-02-009 was objectively reasonable in light of clearly established law at the time of the actions at issue. Thus, the Motion for Summary Judgment (Record Document 133) filed by Warden Michael on the grounds of qualified immunity is denied.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 1st day of August, 2008.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE